UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-904-SEB-TAB |
| | ) | |
| KENT A. BEAMS, M.D., | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff's Motion for Summary Judgment [Docket No. 16], filed on January 9, 2008, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1. Plaintiff, United States of America, brings this claim against Dr. Kent A. Beams, Defendant, for his alleged default with respect to a government-insured Health Education Assistance Loan ("HEAL"), in violation of the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001 *et seq*. For the reasons detailed in this entry, we GRANT Plaintiff's Motion for Summary Judgment.

**Factual Background**

Dr. Beams is a medical doctor currently residing in Monroe County, Indiana. Ans. ¶ 2. While attending Loma Linda University, Dr. Beam applied for and received a Health Education Assistance Loan ("Loan") in the principal amount of $10,000, and on April 18, 1984, executed a promissory note agreeing to repay the Loan at a variable rate of interest

beginning the first day of the tenth month after either ceasing to be a full-time student or completing a residency program.  Pl.'s Exh. 1 (Cert. of Indebtedness).  The Loan was initially issued by a private lender and assigned to the United States; thereafter, it was assigned to the Student Loan Market Association ("SLMA" a.k.a. "Sallie Mae"), and again assigned to the Department of Health and Human Services ("HHS"), which now owns the note.  Id.; see also Klinges Dec. ¶ 3.

Between May 19, 1986, and June 11, 2002, Dr. Beams made one hundred and forty-four (144) payments totaling $19,933.55 on the Loan.  Pl.'s Exh. 1.  Due to financial difficulties, Dr. Beam filed for Chapter 13 bankruptcy on May 30, 2002, in the Eastern District of California, and secured a discharge of his debts on December 29, 2006.  Id.  Due to the bankruptcy, SLMA filed an insurance claim with HHS.  Id.  On July 10, 2002, HHS paid the claim in the amount of $12,052.00, and received an assignment of the note.  Id.  On September 23, 2002, Dr. Beams made an additional payment on the unpaid loan in the amount of $111.60, bringing his total payments to $20,045.15.  Id.

The Government alleges that, in a letter dated April 5, 2006, HHS notified Mr. Beams that, though payments on his Loan were suspended during the bankruptcy proceedings, the debt was not discharged in bankruptcy.  Id.  The Government further alleges that HHS directed Dr. Beams to enter into a repayment agreement within thirty days of receipt of the April 5, 2006, letter, but that he failed to do so.  Id.  Thus, on May 18, 2006, HHS provided further notification to Dr. Beams of its intent to refer his Loan for debt collection in the absence of a written response, repayment agreement, or payment

in full within sixty days of receipt of the letter.  Id.  Hearing nothing from Dr. Beams, on June 1, 2006, he was informed by HHS that his account had been referred to OSI Collection Services, and that it would also be referred to the Department of Justice ("DOJ") for prosecution, unless either the debt was paid in full, or Dr. Beams executed a repayment agreement.  Id.

HHS was unsuccessful in its many attempts to secure an acceptable repayment schedule with Dr. Beams.  Id.  After the unsuccessful attempts at collection and the referral of the debt to the DOJ for collection, this litigation commenced on July 12, 2007, with the filing of the Complaint by the United States.  On January 9, 2008, the Government filed this motion for summary judgment, contending that it has established, in accordance with Rule 56(c), the three elements of the *prima facie* claim for recovery on a promissory note for a federal loan.

## Legal Analysis

### I.    Standard of Review

Summary judgment is appropriate when the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).

**II.   Discussion**

The United States seeks summary judgment in its favor based on its claims that there are no genuine issues of material fact with respect to the existence the Loan, the amount that remains to be paid or Dr. Beams's obligation to pay it. To prevail on a claim of a defaulted student loan, the United States must show that: (1) the defendant signed the note; (2) the government is the present holder of the note; and (3) the note is in default.

See, e.g., U.S. v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001).  According to the Government, the promissory note in the record establishes that on April 18, 1984, Dr. Beams signed the note to secure the $10,000 HEAL loan, (see Exh. A), and the Certificate of Indebtedness and Affidavit establish that the United States holds the rights to the note and that the Loan is in default.  See Pl.'s Exh. 1; Exh. D.  Thus, the Government contends that, because it has established all three of these elements of the *prima facie* claim for recovery on a promissory note for a federal loan, summary judgment is warranted in accordance with Rule 56(c).

Although Dr. Beams does not dispute that he applied for and was granted the Loan and that the United States is currently the holder of the Loan, he rejoins that in fact two issues of material fact do exist, and therefore, summary judgment is unavailable to the Government.  First, he alleges that he previously satisfied the debt, or, alternatively, if he did not satisfy it, that the remaining balance on the Loan is unsettled.  Second, Dr. Beams posits that the Loan was included in the repayment plan approved by the Bankruptcy Court and discharged in bankruptcy.  For the reasons stated below, we hold that no genuine issues of material fact are present within this case.

### A.     **Amount of the Debt**

Although Dr. Beams originally took out a $10,000 Loan, by the time he had successfully completed school and his residency program and the grace period deferring repayment had expired, the amount of the debt had risen to $12,044.03, due primarily to

the accrual of interest.  See Pl.'s Exh. 1; Exh. D.  At that point, Dr. Beams began making monthly payments on his Loan, but the payments that he made between May 1986 and March 1990 satisfied only the accrued interest without any decrease in the principal.  See Exh. D.  Moreover, because Dr. Beams's monthly payments between January 1990 and June 1993 were sporadic, the amounts paid failed to satisfy even the interest accruing on the Loan, thereby increasing the overall balance due.  See id.  Dr. Beams's failure to make regular monthly payments on this indebtedness explains the fact that he has paid, to date, the amount of $20,045.15, yet not paid off the balance of the debt.

Dr. Beams responds that, because the sum of $20,045.15 is such a significant amount in relation to the amount he originally borrowed, it *must* satisfy the Loan's balance.  This contention, unsupported as it is by any evidence or legal authority, does not create a genuine issue of material fact concerning the satisfaction of the Loan.

Moreover, Dr. Beams's contentions that he previously satisfied the debt, or, alternatively, that SLMA inaccurately recorded the balance of his debt, are unconvincing. In making these arguments, Dr. Beams relies on three entries dated June 22, 2000, in the Loan's Borrower Repayment History report ("BRH report").[1]  There it is recorded that, on that day, Dr. Beams submitted a payment of $141.28, and a "declining balance" of zero, followed immediately by a second entry, bearing the same June 22, 2000, date, indicating a "declining balance" of $13,275.58.  See Def's Exh. 3.  Although this report

---

[1] Dr. Beams refers to this report as "Plaintiff's Exhibit 3"; however, it appears to the Court to be a reference to "Defendant's Exhibit 3."

appears at first reading to be confusing, a more careful examination of the document in its entirety makes clear that the debt was not satisfied as of June 22, 2000. By calculating the payments that Dr. Beams had previously made, utilizing the BRH report submitted by him, it is clear that by June 22, 2000, Dr. Beams had failed to remit sufficient payments to satisfy even the interest accrued on the debt, much less the principal indebtedness.

Our interpretation of the BRH report is confirmed through the affidavit of one Diane Klinges, a SLMA Claims Analyst, who submitted a "user friendly" copy of the BRH report, which reflects, in addition to the information on the payment history report as submitted by Dr. Beams, the month-to-month fluctuations of the Loan's balance. That report makes clear that Dr. Beams's balance as of June 22, 2000, was $13,275.58, not zero, the amount alleged by Dr. Beams. See Exh. D. Ms. Klinges further explained that the potentially confusing entry dated June 22, 2000, referencing a "declining balance" of zero actually indicates the shift in SLMA's responsibilities from merely servicing the Loan, to owner of the Loan. Id. ¶ 3. Ms. Klinges's unrebutted testimony clarifies the June 22, 2000, entries in the BRH report and conforms with the other evidence in the record on this issue. Dr. Beams's alternative contentions that the balance of the Loan had either been satisfied or that the amount sought by the United States had otherwise been miscalculated lack any evidentiary or legal support and thus cannot defeat the Government's request for summary judgment on this basis.[2]

---

[2] Additionally, Dr. Beams contends that the affirmative defense of estoppel applies in this
(continued...)

### B. Discharge in Bankruptcy

Dr. Beams also alleges that there is an issue of material fact concerning whether the Loan was included within his repayment plan issued by the Bankruptcy Court and was thus discharged. This assertion is also wholly without support in the record. As a general rule, general education loans are excepted from a debtor's discharge. See 11 U.S.C. § 523(a)(8) ("A discharge under Section 727, 1141, 1228(a) or 1328(b) of this title does not discharge an individual debtor from any debt . . . for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . . ."). Section 523(a)(8) is intended to be self-executing, which means that "educational loans are presumed to be not discharged in bankruptcy unless an affirmative act is taken to seek determination of the dischargeability of the debt." In re Washington, 41 B.R. 211, 213-14 (Bankr. Va. 1984). Thus, in order to obtain a discharge of a student loan, a debtor must bring an adversary proceeding and obtain a judicial determination of dischargeability. See In re Walton, 340 B.R. 895, 897 (Bankr. S.D. Ind. 2006) (holding

---

[2](...continued)
case. However, as the Seventh Circuit has held, "[t]he affirmative defense of equitable estoppel is not applicable against the government in the same manner as against a private party." United States v. Bob Sofer Oldsmobile-Cadillac, Inc., 766 F.2d 1147, 1151 (7th Cir. 1985). Estoppel is not applicable in cases involving the United States, unless the government's actions constitute "affirmative misconduct." Pratte v. NLRB, 683 F.2d 1038, 1041 (7th Cir. 1982). Beyond merely asserting the defense, Dr. Beams has failed to elucidate an argument or set forth any evidence to satisfy his burden of establishing affirmative misconduct by the Government. Thus, estoppel is not an available defense in this case.

that, to the extent a bankruptcy plan provision sought to discharge educational loans in the absence of a judgment of the court in a ripe adversary proceeding, it violated the Bankruptcy Code).

Generally, in order to obtain a discharge of a student loan in an adversary proceeding, the debtor must prove that he or she qualifies for "undue hardship" discharge of the student loan obligations, which, in the Seventh Circuit, requires the debtor to show that: "[he or] she cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself or] herself and [his or] her dependants if forced to repay the loans; (b) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (c) the debtor has made a good faith effort to repay the loans." In re Archibald, 280 B.R. 222, 227 (Bankr. S.D. Ind. 2002) (citing In re Roberson, 999 F.2d 1132, 1137 (7th Cir. 1993)). Additionally, obtaining discharge of a HEAL loan is even more difficult than obtaining discharge of a general educational loan because the debtor must meet the more stringent standard of unconscionability. See 42 U.S.C. § 292f(g) (providing that, among other requirements, a HEAL loan can only be discharged "upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable . . ."). Thus, as courts in other circuits have acknowledged, the use of the term "unconscionable" leaves "little doubt that in using this term [Congress] intended to severely restrict the circumstances under which a HEAL loan could be discharged in bankruptcy." United States Dep't of Health & Human Servs. v. Smitley, 347 F.3d 109, 116 (4th Cir. 2003) (quoting In re Rice,

78 F.3d 1144, 1148 (6th Cir. 1996)).

Here, on November 21, 2006, the United States Bankruptcy Court for the Eastern District of California issued an order in Case No. 02-26170-A-13D, summarizing Dr. Beams's confirmed Chapter 13 Plan.  Exh. D.  Under the Plan, HHS was awarded no allocation of funds, nor was the Loan specifically discharged.[3]  Id.  It is clear from the record that no adverse proceeding was initiated by Dr. Beams in order to determine whether the Loan was dischargeable, nor has a judicial ruling or finding of dischargeability been issued.  Accordingly, the Loan was not discharged in bankruptcy and, thus, no genuine issue of material fact exists concerning whether the status of the Loan was affected by the bankruptcy proceeding.

## III.   Conclusion

Based upon the submitted information, no genuine issues of material fact exist within this case.  Therefore, for the reasons detailed above, Plaintiff's Motion for Summary Judgment is <u>GRANTED</u>.  Dr. Beams is required to pay the principal sum of $15,102.96; plus interest computed from the date of default, July 10, 2002, to April 6, 2007, at the rate of 8.125% per annum, in the sum of $369.81, for a total of $15,472.77;

---

[3] In fact, Dr. Beams's Plan clearly states that the Loan from SLMA/Sallie Mae, which serviced the Loan at the time of the bankruptcy proceeding, qualifies as a Class 4 claim which will continue to be paid by the debtor.  See Def.'s Exh. 2.  The court order states that Class 4 claims, including the Loan, are "not delinquent when the bankruptcy was filed, are not modified by this [bankruptcy] plan, and will be paid directly by Debtor or by a third party. . . ."  Id.

plus interest to the date of judgment at the rate of $3.36 per day. Post judgment interest shall accrue thereafter at the prevailing rate until the judgment is paid in full. Final judgment will be entered accordingly.

    IT IS SO ORDERED.

Date: ____04/16/2008_____

                                         _____
                                         SARAH EVANS BARKER, JUDGE
Copies to:                                 United States District Court
Carl Paul Lamb                          Southern District of Indiana
clamb@carllamblaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov